FILED
United States Court of Appeals
Tenth Circuit

April 22, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

LILIANA DAMASCHIN,

      Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

      Respondent.

No. 12-9571
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and **HOLMES**, Circuit Judge.

---

Petitioner Liliana Damaschin seeks review of a decision of the Board of

Immigration Appeals (BIA) denying a continuance to await adjudication of an I-130

immediate-relative visa application filed by her second U.S. citizen husband, denying

voluntary departure, and affirming her removal for overstaying her original visa

(a charge she conceded).  We uphold the BIA's denial of the continuance and dismiss

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Ms. Damaschin's challenge to the denial of voluntary departure for lack of jurisdiction.

On January 12, 2009, three months after her initial appearance in removal proceedings and nine days before her next hearing, Ms. Damaschin married Robert Barnes in Las Vegas, Nevada. She then returned to her home in Jackson, Wyoming, and Mr. Barnes returned to his home in Arizona (though he subsequently moved to Afton, Wyoming, approximately 60 miles from Jackson). A short time later, with Ms. Damaschin's assistance, Mr. Barnes submitted an I-130 application on her behalf, falsely indicating that they had been residing together at her home in Jackson. In truth, they never lived together or consummated the marriage, nor did they jointly hold any property or commingle funds. But with this I-130 application pending, the removal proceedings against Ms. Damaschin were continued multiple times.

In the meantime, in October 2009, Ms. Damaschin began dating Tyler Pitman. At a hearing in May 2010, she informed the immigration judge (IJ) that she and Mr. Pitman lived together, were expecting a child, and planned to marry upon finalization of her divorce from Mr. Barnes. The marriage took place in June and the next month Mr. Pitman filed an I-130 application for Ms. Damaschin, who requested that the removal proceedings be continued until this new application was resolved. On August 19, 2010, the IJ held a hearing to determine whether there was good cause—i.e., a substantial likelihood the second I-130 application would succeed—to further postpone final disposition of the removal proceedings. This inquiry actually

looked to the first I-130 application and the marriage it was based on, because a subsequent application cannot be approved if "the alien has previously been accorded, or sought to be accorded, an immediate relative . . . status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c).

After the hearing, the IJ concluded Ms. Damaschin failed to present sufficient evidence that her first marriage was not entered into fraudulently to support the first I-130 application and, hence, to show that the second application was, at least as a prima facie matter, approvable. In reaching this conclusion, the IJ invoked the presumption that marriages contracted after issuance of a notice of removal are fraudulent, cited the facts undercutting the validity of the marriage recounted above, pointed out the lack of third-party corroboration of the bona fides of the marriage, and noted conflicts in the pertinent testimony of Ms. Damaschin and Mr. Barnes. Accordingly, the IJ denied Ms. Damaschin's request for a further continuance of the proceedings and ordered her removed. In addition, based on her inability to demonstrate the bona fide nature of her first marriage and the inconsistencies in the testimony she and Mr. Barnes had given, the IJ found she had not established good moral character to warrant an allowance of voluntary departure.

The BIA upheld both rulings, "adopt[ing] and affirm[ing] the decision of the [IJ], with [additional] notations." Admin. R. at 7. The BIA agreed with the IJ that

- 3 -

the first marriage would likely be found a sham, which would in turn preclude the grant of the second I-130 application. Thus, there was no good cause shown for further postponing removal. The BIA also held that voluntary departure was properly denied on grounds of moral character.

We review the denial of a continuance in removal proceedings for abuse of discretion. *Luevano v. Holder*, 660 F.3d 1207, 1213 (10th Cir. 2011). "Only if the decision was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis, will we grant the petition for review." *Id.* (internal quotation omitted). Having reviewed the BIA and IJ decisions in light of the evidentiary record, the governing law, and the arguments advanced in the petition, we see no such basis for an abuse of discretion in the denial of the continuance sought by Ms. Damaschin.

Our jurisdiction over the denial of voluntary departure is limited. Given the constraints on judicial review in 8 U.S.C. §§ 1229c(f) and 1252(a)(2)(B), "we retain jurisdiction [solely] to review constitutional claims and questions of law involving statutory construction," *Alzainati v. Holder*, 568 F.3d 844, 850 (10th Cir. 2009) (explaining limited review preserved by 8 U.S.C. § 1252(a)(2)(D), citing *Diallo v. Gonzales*, 447 F.3d 1274, 1281-82 (10th Cir. 2006)). Ms. Damaschin has not argued that her constitutional rights were violated, nor has she challenged the BIA's decision on a basis that involves a question of statutory construction. She contends factors favorable to her case were given no weight, but if this is intended as a Due Process

objection, it "is nothing more than a challenge to the agency's discretionary and fact-finding exercises cloaked in constitutional garb." *Kechkar v. Gonzales*, 500 F.3d 1080, 1084 (10th Cir. 2007); *see, e.g.*, *Rodriguez-Rodriguez v. Holder*, 327 F. App'x 80, 82 (10th Cir. 2009); *Tobar v. Gonzales*, 200 F. App'x 796, 800 (10th Cir. 2006). She also insists she was not actually found to have entered into a sham marriage for immigration purposes—a determination ultimately reserved to the United States Citizen and Immigration Services in connection with her I-130 application. But for purposes of voluntary departure, on which she bore the burden, *Garcia v. Holder*, 584 F.3d 1288, 1289 (10th Cir. 2009) (quoting 8 C.F.R. § 1240.8(d)), the absence of a conclusive ruling on the sham-marriage issue did not inure to her benefit. She had to show she was of good moral character and the serious question raised about her marriage to Mr. Barnes put that in doubt. Any inconclusiveness in the matter just meant she had not proven her eligibility for voluntary departure. *See id.* at 1290. In sum, no colorable constitutional objection has been raised here, and we lack jurisdiction to review the BIA's denial of voluntary departure.

The petition for review is denied in part and dismissed in part.

Entered for the Court

John C. Porfilio
Senior Circuit Judge

- 5 -